JOHN SCANLON v. JOHN WANLESS AND ANOTHER.
HENRY E. WEBSTER, APPELLANT.[1]

October 7, 1921.

No. 22,342.

**Judgment notwithstanding verdict.**

1. Even though the evidence was insufficient to justify a verdict for plaintiff, defendant was not entitled to judgment notwithstanding the verdict if it appeared probable to the trial court that what was lacking can be supplied at another trial.

**Exercise of judicial discretion.**

2. The trial court exercises judicial discretion in determining the probability of the existence of the evidence needed.

[1] Reported in 184 N. W. 570.

Action in the district court for St. Louis county to recover $17,300 for malpractice. The case was tried before Fesler, J., who when plaintiff rested granted a motion to dismiss the action as to defendant Wanless and denied a similar motion by defendant Webster, and at the close of the testimony denied defendant Webster's motion for a directed verdict on the ground that plaintiff had failed to establish any negligence on his part or any causal connection between any of the acts of defendant and the final injury from which plaintiff suffered, and a jury which returned a verdict for $1,850. Defendant Webster's motion for judgment notwithstanding the verdict was denied and his motion for a new trial was granted because of errors of law. From the order denying his motion for judgment notwithstanding the verdict and granting a new trial, defendant appealed. Affirmed.

*Baldwin, Baldwin, Holmes & Mayall,* for appellant.
*Samuelson, McHugh & O'Donnell,* for respondent.

HOLT, J.

Plaintiff, recovered a verdict for malpractice against this defendant. The latter moved in the alternative for judgment notwithstanding the verdict or a new trial. A new trial was awarded for errors of law solely, and judgment non obstante was denied. The defendant appeals.

Because a hypothetical question put to plaintiff's medical expert was not so framed as to correctly state the facts respecting appellant's treatment and plaintiff's condition and situation, a new trial was granted.

A brief statement of the facts are these: Plaintiff, over 50 years old, while working on a farm a short distance from Cramer, Minnesota, was kicked by a horse and his heel bone fractured. His employer brought him to appellant for treatment. The foot was put in splints for a week or ten days, then in a cast, which was kept on for some six or seven weeks. After the cast had been on for about three weeks, plaintiff, with the approval of appellant, went back to his employer. Plaintiff says he was directed to remove the cast in three or four weeks. Appellant testified that he advised that it be kept on during the journey and removed as soon as plaintiff reached his destination. Plaintiff claims there were sores about the ankle when the cast was removed;

that he came down to Duluth to see appellant who, after examining the foot and prescribing the use of a salve, sent him back. A couple of months thereafter plaintiff became very ill with pneumonia. His employer again brought him to appellant at Duluth for treatment. He recovered, but it was then found that, near the ankle of the injured foot, gangrene had so developed that an amputation of the leg a few inches above the knee was imperative. In general terms the complaint alleged that appellant negligently and unskilfully treated the fracture, and that as a result he "contracted pneumonia and a septic condition of the leg ensued."

The evidence of improper or negligent treatment came from Dr. Wunder, plaintiff's medical expert, and was simply to this effect, that in his opinion the treatment given by appellant was not proper, and that the gangrene, being local, was due to poor circulation and infection. There was no expert testimony that any treatment could have saved the leg or prevented the gangrene. The medical testimony adduced by appellant was that the gangrene was wholly due to poor circulation because of the advanced arteriosclerosis then existing in the leg, and could not have been caused by the abrasions which plaintiff claims were on the ankle when the cast was taken off. There was no expert testimony in contradiction thereof, except that Dr. Wunder considered the gangrene due in part to infection. But appellant, by a number of competent doctors, also proved that the gangrene which appeared on plaintiff's ankle, and because of which the amputation became necessary, was dry gangrene and hence could not have come from infection. There was no testimony in contradiction thereof. This is not a case where the jury from their own knowledge and experience could determine what caused the gangrene, or what treatment, if any, a physician exercising ordinary care and skill could have used that might have prevented its formation and saved the leg. As the record now stands the evidence must be held insufficient to support a verdict.

But the conclusion reached does not entitle to a reversal of the order denying the motion for judgment non obstante. The rule is that, "even where there was a total absence of evidence on some material point, but where it appeared probable that the party had a good cause of action

or defense, and that the defect in the evidence could be supplied on another trial," judgment will not be ordered notwithstanding the verdict. Cruikshank v. St. Paul F. & M. Ins. Co. 75 Minn. 266, 77 N. W. 958. On this branch of the motion the order of the trial court must be regarded as, in some measure, discretionary. The only difficulty we have is whether it can be said that the court below was right in holding, as he must have done, that it appeared probable that the defect in the evidence could be supplied at another trial. The probability in the mind of the court of the existence of such evidence might be found in the fact that plaintiff's attorneys, perhaps inadvertently, made no attempt to elicit the opinion of Dr. Wunder as to whether proper treatment could have prevented gangrene, or as to whether the gangrene which developed, being dry gangrene, could have come from the abrasions caused by the cast, or any neglect in their treatment. There is no claim that amputation, when made, was not the proper treatment, or that the result was not as good as might be expected, considering the advanced sclerosis of the artery in that leg.

We are unable to hold that it did not appear probable to the learned trial court that the lack of medical expert testimony to make out a case for malpractice can be supplied upon another trial.

The order is affirmed.